UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GEORGE FACCIO,

                                              Petitioner,         9:10-CV-362
                                                                       (Lead)
                v.                                                          9:10-CV-363
                                                                          (Member)
                                                                            (FJS)

JEAN KING, Acting Superintendent,

                                              Respondent.
_____

**APPEARANCES**                                     **OF COUNSEL**

**GEORGE FACCIO**
**02-A-2571**
Woodbourne Correctional Facility
Riverside Drive
Woodbourne, NY 12788
Petitioner *pro se*

**OFFICE OF THE NEW YORK**            **THOMAS B. LITSKY, AAG**
**STATE ATTORNEY GENERAL**
120 Broadway
New York, New York 10271
Attorneys for Respondent

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. BACKGROUND

**A.     Proceedings in state court**

       The record reflects that, in 1991, Isaac Torres was a member of the Latin Kings gang in

Brooklyn, New York. *See* Transcript of Trial of George Faccio dated January 28, 2002 ("Trial Tr.")

at 1533-35. When he moved up to Columbia County in 1993, Torres met other members of that

gang, including John J. Huntt, Hector L. DeJesus, Daniel Faccio ("Daniel"),[1] and Daniel's twin brother, Petitioner *pro se* George Faccio. *See id.* at 1535-41, 1549. In March, 2001, Daniel was designated as the individual in charge of the Upstate, New York Latin Kings members. *See id.* at 1546-48. On July 1, 2001, Torres went to Daniel's home. *See id.* at 1569. Daniel directed Torres to speak to Daniel Rodriguez,[2] who in turn informed Torres that Huntt had not "defended" the Latin Kings on numerous occasions and that Rodriguez had received an order to kill Huntt. *See id.* at 1570-71. Torres was then told where a gun had been hidden which could be used to facilitate the death of Huntt, as well as the location of where Huntt was to be killed. *See id.* at 1573-75. Torres then drove with Rodriguez to retrieve the hidden handgun; and, after Rodriguez took the gun, the two began to drive to the site where Huntt was to be murdered. *See id.* at 1575. Around that time, Torres observed Petitioner driving a black Intrepid automobile with Huntt and another member of the Latin Kings as passengers. *See id.* at 1575, 1579. The two cars then traveled for a period of time, eventually stopping at the location where Torres had been informed that Huntt was to be executed. *See id.* at 1575-79. Petitioner then said, "C'mon, get these guns," and he and Huntt left their vehicle. *See id.* at 1581.[3] Rodriguez then exited his vehicle and pointed the gun he had retrieved at Huntt. *See id.* at 1584. Torres then heard "pop," after which "[e]verybody ran and jumped back in the car and left." *Id.*

On the evening of the shooting, the New York State Police received a telephone call from

---

[1] Daniel is also known by the nickname "BU." *See* Trial Tr. at 1549.

[2] Rodriguez has the nickname of "Babyface." *See* Trial Tr. at 886.

[3] Torres testified that Huntt accompanied Petitioner on the trip because he had been led to believe that the Latin Kings were retrieving guns that had been hidden in some woods. *See* Trial Tr. at 1582.

an individual who reported discovering a body on High Ridge Villa Road, a dirt road in the Town of Cairo. *See id.* at 813-14. New York State Police Investigator Joseph E. Caputo responded to the call and soon thereafter came upon the lifeless body of a Hispanic male, later identified as Huntt, who had been shot once in the back of the head. *See id.* at 814. Investigator Caputo also discovered an empty shell casing near the body. *See id.*

During the course of the ensuing investigation, it was determined that a black Intrepid automobile might be involved with the crime. *See id.* at 838-39. It was also discovered that the victim of the homicide was a member of the Latin Kings gang in Columbia County. *See id.* at 853. Police then started canvassing the area where Latin Kings members were known to frequent; and during that time, Investigator William Fitzmaurice of the New York State Police noticed a black Intrepid automobile with "some dirt on it" parked near Daniel's residence. *See id.* at 854-56. It was subsequently established that partial tire impressions that had been taken at the scene of the homicide were consistent with having been made by the tires of that Intrepid automobile or another vehicle having similar tires. *See id.* at 1407. Additionally, the fingerprints of Huntt, Petitioner, Daniel and other individuals were found to be present in that black Intrepid automobile. *See id.* at 1380-81.

As a result of the foregoing, a Greene County grand jury returned a three-count indictment against Petitioner, Daniel, Rodriguez and Torres. In that accusatory instrument, the grand jury charged those men with murder in the second degree, in violation of New York Penal Law ("Penal Law") § 125.25(1); conspiracy in the second degree, in violation of Penal Law § 105.15; and criminal possession of a weapon in the second degree, in violation of Penal Law § 265.03(2). *See* Trial Tr. at 741-42.

Beginning on January 28, 2002, Petitioner and Daniel were tried jointly before a jury in a trial over which Greene County Court Judge George J. Pulver, Jr. presided.  At the conclusion of that trial, the jury found Petitioner guilty of second degree conspiracy but acquitted him of the murder and criminal possession of a weapon counts.  *See* Trial Tr. at 2421.[4]  On April 23, 2002, the County Court sentenced Petitioner, as a second felony offender, to an indeterminate sentence of twelve and one-half to twenty-five years of imprisonment.  *See* Transcript of Sentencing of George Faccio dated April 23, 2002, at 16-17.

Before Petitioner perfected his appeal to the New York State Supreme Court, Appellate Division, Third Department, he filed a *pro se* motion to vacate his judgment of conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10 motion ("CPL Motion") with the county court.[5]  In its Decision and Order dated May 24, 2006, the county court denied Petitioner's CPL Motion.  *See* Dkt. No. 10-3.[6]  On August 8, 2006, the Third Department denied Petitioner leave to appeal that Decision and Order.  *See* Dkt. No. 10-4.

Petitioner, thereafter, perfected the direct appeal of his conviction; and, on October 19, 2006, the Third Department affirmed his judgment of conviction.  *See People v. Faccio*, 33 A.D.3d 1041 (3d Dep't 2006), *leave denied*, *People v. Faccio*, 8 N.Y.3d 845 (2007).

In a letter dated May 14, 2008, Petitioner advised the Appellate Division that he was in the "process of submitting an ***Error Coram Nobis*** motion on [sic] ineffective assistance of counsel"

---

[4] The jury found Daniel not guilty of all charges.  *See* Trial Tr. at 2420-21.

[5] The parties did not provide this Court with a copy of Petitioner's CPL Motion.

[6] Unless otherwise indicated, all references to docket numbers throughout this Memorandum Decision and Order relate to the initial case that Petitioner filed, which the Clerk of the Court opened on March 29, 2010, *see Faccio v. King*, 10-CV-362.

with that court. *See* Dkt. No. 10-5 ("May, 2008 letter") (emphasis in original). By letter dated June 4, 2008, an assistant deputy clerk with the Third Department acknowledged receipt of Petitioner's letter. *See* Dkt. No. 16 ("June, 2008 letter"). In that letter, the Third Department advised Petitioner that such court had returned the record on appeal relating to Petitioner's conviction to the Greene County clerk in December, 2006, and that, "in the event [Petitioner] wish[ed] to make a motion for a writ of error coram nobis in [that court, he] must attach to [his] motion papers any pages that [he wished] to cite from that record on appeal." *See id.*

More than one year after Petitioner wrote his May, 2008 letter, on June 23, 2009, Petitioner filed a *coram nobis* application with the Appellate Division, in which he argued that he received the ineffective assistance of appellate counsel. *See* Dkt. No. 10-6 ("*Coram Nobis* Application"). On September 14, 2009, the Appellate Division denied Petitioner's motion, *see* Dkt. No. 10-7; and on February 3, 2010, New York's Court of Appeals denied Petitioner leave to appeal the decision of the Third Department. *See People v. Faccio*, 14 N.Y.3d 770 (2010).

B.   **The current action**

Petitioner filed two separate habeas petitions pursuant to 28 U.S.C. § 2254 with this Court, both of which he signed on March 18, 2010. *See Faccio v. King*, 10-CV-362, Dkt. No. 1 ("Petition") at 7; *Faccio v. King*, 10-CV-363, Dkt. No. 1 at 7. By order dated April 5, 2010, this Court consolidated those actions and directed Petitioner to file an amended petition in this consolidated proceeding. *See* Dkt. No. 4. In compliance with that directive, on April 14, 2010, Petitioner filed an amended pleading. *See* Dkt. No. 5 ("Amended Petition"). In his amended petition, Petitioner alleged that (1) his appellate counsel rendered ineffective assistance by "failing

to raise several meritorious, significant and obvious issues" on appeal; (2) his trial counsel was ineffective because he "committed numerous errors and made numerous omissions which virtually insured Petitioner's conviction;" (3) the trial court deprived Petitioner of his right to a fair trial when it denied defense counsel's request for "a brief adjournment to obtain favorable evidence;" (4) the prosecutor denied Petitioner a fair trial because he offered Rodriguez a reduced sentence concerning his involvement in the death of Huntt in exchange for Rodriguez's agreement to testify against Petitioner; (5) the prosecutor wrongfully failed to provide defense counsel with all *Rosario*[7] and *Brady*[8] material to which Petitioner was entitled; (6) exculpatory evidence was tampered with and/or destroyed; (7) the county court wrongfully failed to hold a hearing regarding a prosecution exhibit; (8) the trial court erred in its supplemental charge to the jury during its deliberations; (9) the county court wrongfully failed to re-open a pretrial *Sandoval*[9] hearing; and (10) the cumulative effect of the errors committed at trial during the course of the related criminal matter deprived Petitioner of his right to a fair trial. *See* Amended Petition, Grounds One Through Eleven.[10]

On October 8, 2010, Respondent filed a motion to dismiss Petitioner's amended pleading, *see* Dkt. No. 10, together with a memorandum of law in support of that motion, *see* Dkt. No. 11 ("Respondent's Memorandum"). Respondent attached to his motion various state-court records relating to Petitioner's conviction. *See* Attachments to Dkt. No. 10. Respondent argued that this

---

[7] *People v. Rosario*, 9 N.Y.2d 286 (1961).

[8] *Brady v. Maryland*, 373 U.S. 83 (1963).

[9] *People v. Sandoval*, 34 N.Y.2d 371 (1974).

[10] In both the sixth and seventh grounds in his amended petition, Petitioner argues that exculpatory evidence was wrongfully destroyed.

Court should dismiss this action because Petitioner did not timely file his petition in light of the one-year statute of limitations applicable to habeas petitions. *See* Respondent's Memorandum.

Petitioner filed a response in opposition to the motion to dismiss, in which he argued that he did timely file his petition. *See* Dkt. No. 14 ("Petitioner's Memorandum"). Respondent thereafter filed a letter-brief in further support of his motion. *See* Dkt. No. 15.

## II.  DISCUSSION

**A.     Statute of limitations generally**

Congress' enactment in 1996 of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), brought about significant changes to the prisoner litigation landscape. One of those changes was the institution of a one-year statute of limitations that applies to habeas corpus petitions filed after April 24, 1996. *See* 28 U.S.C. § 2244(d). The law now provides, among other things, that

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; . . .
>
> * * * * *
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

A judgment of conviction becomes "final" for AEDPA purposes at the conclusion of the ninety-day period during which the petitioner could have filed a writ of *certiorari* with the United States Supreme Court. *See Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001) (quotation and other citations and footnote omitted); *see also Nevarez v. Conway*, No. 09 Civ. 8220, 2011 WL 102711, *2 (S.D.N.Y. Jan. 5, 2011) (citing United States Sup. Ct. R. 13(1)) (other citation omitted); *Soto v. Portuondo*, No. 02-CV-28, 2004 WL 2501773, *3 n.4 (E.D.N.Y. Nov. 5, 2004) (citing *Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir. 1998)) (other citation omitted).

**B.      Applicability of AEDPA's limitations period to this case**

Applying the above-referenced statute of limitations to the facts herein, Petitioner's conviction would ordinarily have become final for AEDPA purposes ninety days after January 10, 2007, the date on which New York's Court of Appeals denied Petitioner's leave application. *E.g., Williams*, 237 F.3d at 150. However, Petitioner claims that he did not receive actual notice of the Court of Appeals' decision denying his leave application until April 4, 2007. *See* Petitioner's Memorandum at ¶ 1. When calculating the deadline by which a petitioner must file a habeas petition in light of the AEDPA, the Second Circuit has instructed district courts to consider when the petitioner actually received notice of the state court's decision that commenced the running of the statute of limitations. *See Diaz v. Kelly*, 515 F.3d 149, 154-56 (2d Cir. 2008). In light of that directive, this Court finds that for this action to have been timely commenced, Petitioner was required to have filed this matter no later than one year and ninety days after he actually received notice that New York's Court of Appeals had denied him leave to appeal, or by Thursday, July 3, 2008. As noted above, however, Petitioner did not sign his original petition until March 18, 2010.

-8-

*See* Petition at 7.  Therefore, this action is plainly subject to dismissal as untimely filed unless Petitioner has established a basis for this Court to excuse the late filing of this matter.  *See* 28 U.S.C. § 2244(d); *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000); *Salerno v. People of New York State*, No. 9:98-CV-1187, 2002 WL 31741253, *3 (N.D.N.Y. Dec. 5, 2002) (collecting cases), *adopted*, *Salerno v. People of New York State*, No. 9:98-CV-1187, Dkt. No. 20 (N.D.N.Y. Mar. 25, 2003).

As noted above, under the AEDPA, the time during which a properly filed state-court challenge to a conviction is pending is not counted when computing the date by which a petitioner must timely file a federal habeas petition.  *See* 28 U.S.C. § 2244(d)(2); *see also Saunders v. Senkowski*, 587 F.3d 543, 548 (2d Cir. 2009) (quoting 28 U.S.C. § 2244(d)(2)).  Petitioner filed two such challenges in the related criminal matter: his CPL Motion and his *Coram Nobis* Application.

Considering first the effect, if any, of Petitioner's CPL Motion on the governing limitations period, the Appellate Division denied Petitioner's request for leave to appeal the denial of his CPL Motion on August 8, 2006.  However, as noted above, this Court has determined that the statute of limitations applicable to this action did not begin to run until April 4, 2007 – the date on which Petitioner claims he received notice that New York's Court of Appeals denied him leave to appeal.  Since Petitioner's CPL Motion was not pending before the limitations period applicable to this action had begun to run, such limitations period was not tolled during the pendency of his CPL Motion.

The only other collateral challenge Petitioner filed regarding the conviction challenged herein was his *Coram Nobis* Application.  Petitioner appears to argue that this Court should find that he "filed" that application on May 14, 2008, the date on which he "advised the Appellate

Division, Third Department . . . that he was in the process of preparing a motion for a writ of error coram nobis." *See* Petitioner's Memorandum at ¶ 3. He therefore seems to claim that the AEDPA's statute of limitations was tolled as of May 14, 2008, and because that tolling continued until February 3, 2010 – when New York's Court of Appeals denied his leave application concerning the denial of his *Coram Nobis* Application – he timely commenced this action. *See id.* However, this argument appears to ignore the fact that, after Petitioner sent his May, 2008 letter to the Third Department, that court sent Petitioner a letter which, as noted above, specifically advised him that, "in the event [he wished] to make a motion for a writ of error coram nobis this court, [he] must attach to [his] motion papers any pages that [he wished] to cite from [the] record on appeal." *See* June, 2008 letter. Petitioner was therefore clearly aware that the Appellate Division did not view his May, 2008 letter as a *coram nobis* application. Moreover, Petitioner has cited no authority – and this Court's research has disclosed no precedent – that stands for the proposition that a district court may properly toll the AEDPA's statute of limitations where a party merely sends a letter to a state court indicating his intent to file – at some future date – a collateral challenge to his state-court conviction. Indeed, such a theory is in direct conflict with controlling Supreme Court and Second Circuit precedent regarding this issue; as the Supreme Court has observed, "[a]n application is 'filed,' as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (citations omitted); *see also Hizbullahankhamon v. Walker*, 255 F.3d 65, 70 (2d Cir. 2001) (quotation omitted); *Clark v. Artus*, No. 09-CV-3577, 2010 WL 1269797, *3 (E.D.N.Y. Apr. 1, 2010) (quoting *Artuz v. Bennett*, 531 U.S. 4, 8, 121 S. Ct. 361, 148 L. Ed. 2d 213 (2000)); *cf. Thompson v. Chandler*, No. 02-5787A, 55 Fed. Appx. 758, 2003 WL 343249, **1 (6th Cir. Feb.

12, 2003) (holding that "[a] post-conviction action is neither 'actually pending' nor 'properly filed' until it is actually filed").[11] Since the Third Department advised Petitioner that it did not consider his May, 2008 letter to be a *coram nobis* application, no such application was "filed" with that court at that time. Furthermore, the Second Circuit has instructed courts that, "[t]o toll the AEDPA statute of limitations, the state petition must be both 'properly filed' and 'pending' during the tolling period." *Fernandez v. Artuz*, 402 F.3d 111, 116 (2d Cir 2005). Petitioner's *Coram Nobis* Application was plainly not "pending" with the Third Department in May, 2008. *See*, *e.g.*, May, 2008 letter. Rather, that application was only "pending" when Petitioner actually filed his submission with the Appellate Division in June, 2009, and that court could consider the arguments that Petitioner asserted in support of his request for the relief he sought.

Petitioner filed his *Coram Nobis* Application with the Appellate Division on June 23, 2009. *See Coram Nobis* Application at 2; *see also* Amended Petition at ¶ 11. By the time that action was filed, however, seven hundred twenty-one (721) days had already passed since July 3, 2007 – the date on which his conviction became final. Furthermore, the filing of that application did not "reset" the applicable statute of limitations. *See Johnson v. Graham*, No. 07-CV-269S, 2009 WL 3165842, *5 (W.D.N.Y. Sept. 28, 2009) (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)) (other citations omitted). That filing, however, undeniably tolled the applicable limitations

---

[11] At the time that the Sixth Circuit issued the *Thompson* decision, that Circuit's Rules of Appellate Procedure provided that, although citation to that circuit's unpublished decisions was "disfavored," citations to such decisions were nevertheless appropriate "where the 'unpublished disposition ha[d] precedential value in relation to a material issue in a case, and . . . there [was] no published opinion that would serve as well.'" *E.g.*, *Davis v. Carey*, 149 F. Supp. 2d 593, 598 n.2 (S.D. Ind. 2001) (citing then-6th CIR. R. 28(g)). As of January 1, 2007, Rule 28(f) of the Sixth Circuit's Rules of Appellate Procedure provides that "[c]itation of unpublished decisions is permitted." 6th Cir. R. 28(f).

period, and that tolling continued until February 3, 2010, when New York's Court of Appeals denied Petitioner's application for leave to appeal the denial of his *Coram Nobis* Application. *See People v. Faccio*, 14 N.Y.3d 770 (2010); *see also Flowers v. Ercole*, No. 06 Civ. 6118, 2009 WL 2986738, *7 n.3 (S.D.N.Y. Sept. 18, 2009) (holding that a *coram nobis* application remains "pending" until the date on which New York's Court of Appeals denies the petitioner's application for leave to appeal). The limitations period began to run anew on that date and continued running for a period of forty-two (42) days, until March 18, 2010 – the date on which Petitioner signed his original habeas petition.

As can be seen, excluding the time during which the statute of limitations was tolled due to the pendency of his *Coram Nobis* Application, Petitioner filed the present action seven hundred sixty-three (763) days after his judgment of conviction became final. Petitioner has therefore exceeded the statute of limitations by approximately three hundred ninety-eight (398) days, and this Court must dismiss this action unless it may legally excuse the patently late filing of this action. *See* 28 U.S.C. § 2244(d); *Day v. McDonough*, 547 U.S. 198, 201-02 (2006) (holding that district court properly dismissed, as untimely filed, habeas action brought "some three weeks" after the statute of limitations had expired); *Richard v. Rock*, No. 9:08-CV-145, 2009 WL 383762, *7 (N.D.N.Y. Feb. 10, 2009) (finding that habeas petition that was filed one day after the statute of limitations had expired was subject to dismissal as untimely filed (citing *Smith v. Conway*, No. 07 Civ. 7174, 2008 WL 2531194, at *3 (S.D.N.Y. June 24, 2008))) (other citations omitted).

A district court may consider a habeas petition, which would otherwise be subject to dismissal in light of the AEDPA's statute of limitations, where the court determines that the limitations period should be equitably tolled. *See Holland v. Florida*, ___ U.S.___, 130 S. Ct.

2549, 2562 (2010).  Additionally, although the Second Circuit has acknowledged that the "question remains open" as to "whether 'the [United States] Constitution requires an "actual innocence" exception to [the] AEDPA's statute of limitations,'" *Whitley v. Senkowski*, 317 F.3d 223, 225 (2d Cir. 2003) (quotation omitted), the Second Circuit has nonetheless directed district courts to consider a claim of actual innocence before dismissing a habeas petition as untimely filed.  *See id.*; *see also Friedman v. Rehal*, 618 F.3d 142, 152 (2d Cir. 2010) (holding that "[a] claim of actual innocence could provide a basis for excusing [a] late filing" (citing *Doe v. Menefee*, 391 F.3d 147, 161 (2d Cir. 2004))); *Castillo v. Ercole*, No. 07 Civ. 11256, 2009 WL 1492182, *5 (S.D.N.Y. May 27, 2009) (quotation omitted); *Austin v. Duncan*, No. 02-CV-0732S, 2005 WL 2030742, *4 (W.D.N.Y. Aug. 23, 2005) (quotation omitted).

### 1. *Equitable tolling*

A petitioner is entitled to equitable tolling of the governing limitations period if he establishes "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing" of the habeas petition.  *Holland*, 130 S. Ct. at 2562 (quoting *Pace*, 544 U.S., at 418, 125 S. Ct. 1807).  The Second Circuit has observed that equitable tolling is appropriate only "in 'rare and exceptional circumstances. . . .'" *Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004) (citing *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)); *see also McMichael v. Griffin*, No. 11-CV-00956, 2011 WL 809863, *2 (E.D.N.Y. Mar. 1, 2011) (citation omitted).

Petitioner has not demonstrated that he "diligently" pursued his rights.  As noted above, he learned that New York's Court of Appeals denied his application seeking leave to appeal the Third

Department's denial of his direct appeal on April 4, 2007.  He then waited more than one year after that date before he notified the Third Department of his "intent" to file a *coram nobis* application and then waited until June 23, 2009, before he actually filed that challenge.  Since that chronology plainly precludes this Court from finding that Petitioner diligently pursued his rights in the state courts, this Court need not consider whether "extraordinary circumstances" prevented him from timely commencing the present action because, as the Second Circuit has observed, "[a] litigant seeking equitable tolling must show ***both*** that he 'diligently' pursued his rights and that 'some extraordinary circumstance . . . prevented timely filing.'"  *Jenkins v. Greene*, 630 F.3d 298, 302 (2d Cir. 2010) (emphasis added) (citing *Holland*, 130 S. Ct. at 2562) (other citation omitted).

However, this Court additionally finds that Petitioner has not demonstrated that some extraordinary circumstance prevented him from timely commencing this action.  Read liberally, it appears as though Petitioner argues that the length of the state-court record that he was required to review before submitting his *Coram Nobis* Application constituted an "extraordinary circumstance" warranting equitable tolling.  *See* Petitioner's Memorandum at ¶¶ 4-5.  However, a court may not properly consider the mere fact that a state-court record may be substantial to be an "extraordinary circumstance" sufficient to toll the governing limitations period.  *E.g.*, *United States ex rel. Eichwedel v. Chandler*, No. 09 C 7716, 2010 WL 3732185, *4-*5 (N.D. Ill. Sept. 20, 2010) (holding that petitioner was not entitled to tolling of AEDPA's statute of limitations notwithstanding petitioner's claims that state-court record was voluminous, issues presented in his petition were complex, and prison rules limited amount of legal material petitioner could keep in

his cell).¹² Since nothing before this Court suggests – much less establishes – that extraordinary circumstances prevented Petitioner from timely commencing this action, he is not entitled to equitable tolling of the governing limitations period for this reason as well. *See Holland*, 130 S. Ct. at 2562; *see also Belot v. Burge*, 490 F.3d 201, 205 (2d Cir. 2007) (*passim*).

Since Petitioner has not established that he diligently pursued his rights in the state courts or that exceptional circumstances prevented him from timely filing his petition, this Court finds no basis to invoke equitable tolling in order to salvage his untimely petition.

### *2. Actual innocence*

Considering next whether Petitioner has asserted a credible claim of his actual innocence concerning the conspiracy conviction challenged herein, the Second Circuit has opined that, to establish actual innocence in this context, a petitioner must present """new reliable evidence that

---

¹² Petitioners have timely filed numerous habeas applications notwithstanding the fact that the underlying state-court records were substantial. *See, e.g.*, *Goldberg v. Tracy*, 247 F.R.D. 360, 370 (E.D.N.Y. 2008) (no issue of timeliness raised in habeas petition filed *pro se* where there was a "voluminous trial record," and petitioner had filed a *pro se* application seeking a *writ of error* coram nobis); *Herion v. Phillips*, No. 04-CV-5465, 2008 WL 820746, *15-*20 (E.D.N.Y. Mar. 26, 2008) (*pro se* petitioner timely commenced habeas corpus action notwithstanding the fact that trial transcript consisted of more than 1,300 pages, and petitioner had filed two CPL motions as well as a *coram nobis* application); *Rivera v. Conway*, 350 F. Supp. 2d 536, 539-43 & n.1 (S.D.N.Y. 2004) (habeas petition timely filed despite the fact that state-court record consisted of "more than 2,500 pages of trial transcripts and approximately 800 pages of supporting documents"); *Lovacco v. Kelly*, No. 99 CIV. 3094, 2002 WL 31045942, *5-*6 & n.5 (S.D.N.Y. June 13, 2002) (no claim that habeas corpus petition filed *pro se* was untimely despite the fact that record was "voluminous," and petitioner had filed both a CPL motion as well as a *coram nobis* application); *Stapleton v. Greiner*, No. 98 CV-1971, 2000 WL 1207259, *4-*5, *13 (E.D.N.Y. July 10, 2000) (*pro se* habeas petition timely commenced notwithstanding the fact that petitioner had previously filed three CPL motions and a *coram nobis* application, and district court noted that the state-court record was "voluminous").

was not presented at trial" and "show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt."'" *Whitley*, 317 F.3d at 225 (quotation and other citation omitted); *see also Medina v. McGinnis*, No. 04 Civ. 2515, 2004 WL 2088578, *27 (S.D.N.Y. Sept. 20, 2004) (holding that petitioner who claims actual innocence must present evidence that "would certainly have created a reasonable doubt as to his guilt" (citations omitted)).

In opposing Respondent's motion to dismiss, Petitioner has not argued that this Court should excuse the untimely filing of the present action because he is actually innocent of the conspiracy conviction. *See* Petitioner's Memorandum. Additionally, Petitioner has not provided this Court with any evidence upon which it could properly find that, had such evidence been before the petit jury that convicted him, it is more likely than not that no reasonable juror would have found him guilty of the crime of which he was convicted. Moreover, this Court's review of the state-court record demonstrates that the evidence adduced at trial was more than sufficient to establish Petitioner's guilt of the conspiracy charge. As the Third Department correctly noted in affirming Petitioner's conviction:

> the victim [was observed] in a black Dodge Intrepid driven by [Petitioner]. The owner of the Intrepid testified that she loaned the car to [Petitioner] at about the time of the murder and that he returned with the car approximately 20 minutes later. . . . Around the time of the murder, a disinterested witness saw a black Intrepid, carrying four or five dark-skinned people, driving and then backing up on the dirt road where the body was found. Dust and dirt on the Intrepid linked the car to the dirt road where the murder took place. Tire tread impressions at the murder scene were consistent with the type of tires on the Intrepid that [Petitioner] was driving. The victim's and [Petitioner's] fingerprints were matched to prints recovered from the Intrepid . . . . Witnesses also observed private discussions involving [Petitioner], the codefendant, and other conspirators in the hours leading up to the murder. [Petitioner's] actions in creating a ruse to lead the victim to the remote area is indicative of his mental state,

>   supporting an intent to agree to the commission of the murder . . . .

*Faccio*, 33 A.D.3d at 1042-43 (internal citations omitted).

Since Petitioner has failed to make a credible claim of actual innocence in this action, he cannot now seek safe harbor from the dismissal of his amended petition based upon this final (potential) exception to the AEDPA's statute of limitations.  *E.g.*, *Menefee*, 391 F.3d at 161; *Whitley*, 317 F.3d at 225; *Caraway v. Walsh*, 09-CV-2708, 2010 WL 438392, *2 (E.D.N.Y. Feb. 8, 2010) (citations omitted); *Medina*, 2004 WL 2088578, at *27.

C.  **Certificate of appealability**

Section 2253(c) of Title 28 of the United States Code provides, in relevant part, that,

>   [u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
>
>   (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . . .

28 U.S.C. § 2253(c)(1)(A).[13]

A court may only issue a Certificate of Appealability "if the applicant has made a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  Since Petitioner has failed to make such a showing herein, the Court declines to issue a Certificate of Appealability in this matter.

---

[13] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  Fed. R. App. P. 22(b).

### III. CONCLUSION

Having reviewed the state-court record, the documents that the parties submitted in conjunction with this action, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Respondent's motion to dismiss is **GRANTED** and Petitioner's amended petition in this consolidated action is **DENIED** and **DISMISSED**; and the Court further

**ORDERS** that a Certificate of Appealability shall not be issued; and the Court further

**ORDERS** that the Clerk of the Court shall return any state-court records not filed herein directly to the Attorney General for the State of New York at the conclusion of these proceedings, including any appeal of this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 7, 2011
         Syracuse, New York

                                            Frederick J. Scullin, Jr.
                                            Senior United States District Court Judge